OPINION
{¶ 1} Defendant-Appellant Arthur Long appeals from his conviction and sentence on one count of Felonious Assault. Long challenges the trial court's decision denying his motions for a mistrial and for a new trial, claiming that the State improperly used grand jury testimony during cross-examination and that the State failed to turn over exculpatory *Page 2 
evidence. Second, Long insists that the State should not have been allowed to call an expert as a rebuttal witness. Finally, he argues that his conviction is against the manifest weight of the evidence and that there is insufficient evidence to support that conviction. We conclude that the trial court's denial of Long's motions for a mistrial and for a new trial were within its discretion, as was the trial court's decision to allow the State's use of an expert witness to rebut the defense expert's testimony. We conclude that Long's conviction is supported by sufficient evidence and that it is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} John Hackitt was an avid user of CB radios, and his "handle" was Wild Bill. Arthur Long and Danny Woods described Hackitt as an aggravator, one who likes to get others riled up on the radio. Hackitt and his friends had a pattern of verbal altercations on the radio with Long and his friends. The arguments frequently included coarse language and disparaging remarks about the men's families.
 {¶ 3} On the afternoon of December 10, 2005, Hackitt joined an ongoing conversation between Long and Woods, and soon Long and Hackitt begin arguing. The two men threatened and taunted each other, and Hackitt insulted Long's and Woods's wives and their daughters. The argument continued into the evening, with each man threatening to hurt the other. At one point Long specifically threatened to crack Hackitt's head open.
 {¶ 4} That evening Long decided to go to Hackitt's home with his stepson Travis Hutchinson and his nephew Brian Williams, who lived next door. Long and his witnesses testified that Hackitt is a hothead with a reputation for violence, including previously using a *Page 3 
baseball bat as a weapon, and for drunkenness. Despite this reputation, Long claimed that he went to Hackitt's home just to talk to Hackitt in person.
 {¶ 5} A little before 9:00 p.m. David Svoboda arrived with his friend Kyle Queen at Queen's home just a few houses down from Hackitt's. Svoboda saw a man hitting another man with something long and thin that he believed might have been a baseball bat. Svoboda directed Queen's attention to the fight, and Queen saw a man get out of a van, pick up a long object, and return with it to the van. Both men saw the van drive away, but neither could see anyone else in the van.
 {¶ 6} Svoboda got Queen's brother, Jeremy, who was in training to become an EMT. Jeremy called 911 and then went with his brother and Svoboda to check on Hackitt's condition; he was unconscious. Another neighbor was already there, and Hackitt's girlfriend, Susie Bouquot, soon arrived home from work.
 {¶ 7} The afternoon after the beating, fellow CB enthusiasts Steven McCoy and Curtis Gifford heard Long laughing and bragging to Danny Woods and Darrell Buck on the radio about beating Hackitt. Long said, "Wild Bill came outside and he never knew what was going to happen, and then he got it." Long never stated that Hackitt had come after him first. Instead, Long insisted that "John didn't get a chance" and that "John isn't so tough now." Long kept referring to Hackitt as "Brain Dead Bill."
 {¶ 8} Nevertheless, Long insisted that he knew nothing of the extent of Hackitt's injuries until late on the evening of the 11th, at which time he retrieved the bat and called the police. In fact, Long did leave a message for Detective Burke, the lead investigator on the case early in the morning of December 12th. Long's name had already come up as a suspect the previous day. During the course of the investigation, Long gave Detective Burke *Page 4 
expanding versions of the altercation, adding additional information each time they spoke.
 {¶ 9} Detective Burke went to Long's home to arrest him. At that time Long gave Detective Burke permission to take the bat from his van. At trial, neither Hackitt nor Susie recognized the bat that Long claimed to have grabbed from Hackitt's hands. Hackitt, who used to play softball, explained that the bat was a Little League youth baseball bat that would not have been permitted in a softball league.
 {¶ 10} While at Long's home, Detective Burke interviewed Williams, and two days later he interviewed Hutchinson. Both men supported the major details of Long's story. Long, Williams, and Hutchinson agreed that Hackitt had approached the passenger side of Long's van and tapped on the window. Long called to Hackitt, "I'm over here," and Hackitt went to the driver's side. Long got out of the van. At some point, the defense claimed that Hackitt had a bat that he raised in a threatening manner. Long insisted that he punched Hackitt in self defense and that Hackitt fell backwards to the ground, presumably hitting his head. Long bent down and ensured that Hackitt was still breathing before taking the bat and leaving in the van with Williams and Hutchinson. None of the men called 911. Long took the baseball bat to Danny Woods's home where he left it before returning home.
 {¶ 11} At trial, Long called as an expert witness a biological engineer named Lori Truman. She testified that Hackitt's injuries were not consistent with a side impact to the head from a baseball bat. Instead, she concluded that the injuries were consistent with being hit in the face and falling backwards, hitting the back of the head on a hard, flat surface.
 {¶ 12} In rebuttal, the State called radiologist Joseph Wenker, who had interpreted Hackitt's charts at the hospital on the night of his injuries. Wenker testified that Hackitt's injuries could have been caused either by hitting the back of his head in a fall or by being hit *Page 5 
in the back of the head with a weapon like a baseball bat. He went on to explain that if Hackitt had been hit in the back of the head, one would expect Hackitt to fall forward and that his broken cheek could be consistent with landing on his face.
 {¶ 13} As a result of the beating, Hackitt sustained traumatic brain injuries affecting his memory, and he lost his hearing. Hackitt sustained three skull fractures: a large fracture that ran up the back of his head; another fracture above his ear; and a minor fracture sustained on his cheek. He also suffered multiple hemorrhages and subdermal hematomas.
 {¶ 14} Hackitt spent more than six weeks in the hospital. His last memory prior to the week before his release from the hospital was of talking on the CB on the afternoon of December 10, 2005. Hackitt is no longer able to work. He cannot walk, his balance is poor, and he lost hearing in both ears. At the time of trial, more than seven months after the altercation, Hackitt was still receiving physical, speech, and occupational therapies several times a week.
 {¶ 15} Long was initially indicted on one count of Aggravated Assault, and several months later he was also indicted on one count of Felonious Assault. The case was tried without a jury, and Long was found guilty of Felonious Assault, but not guilty of Aggravated Assault. The court imposed a four-year prison sentence. Long appeals from his conviction and sentence.
 II {¶ 16} Long's First Assignment of Error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE DEFENDANT'S PREJUDICE WHEN IT DENIED DEFENDANT'S MULTIPLE MOTIONS FOR *Page 6 
A MISTRIAL OR A NEW TRIAL BECAUSE THE STATE USED INFORMATION FROM GRAND JURY PROCEEDINGS IN IMPEACHING DEFENDANT'S WITNESS AND THE STATE DID NOT DISCLOSE EVIDENCE THAT WOULD HAVE BEEN FAVORABLE TO THE DEFENDANT."
 {¶ 18} In his First Assignment of Error, Long contends that the trial court erred in denying his motions for a mistrial and for a new trial, made upon the ground of improper use of grand jury testimony and upon the ground that the State failed to disclose exculpatory evidence.
 {¶ 19} We have previously held that "the decision whether or not to grant a mistrial rests in the sound discretion of the trial court.State v. Glover (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900. An appellate court may only reverse a trial court upon a finding that the trial court abused its discretion to the extent that the defendant was materially prejudiced. State v. Stanley (1997), 121 Ohio App.3d 673,699, 700 N.E.2d 881." State v. Mobley, Montgomery App. No. 18878, 2002-Ohio-792. Reversal for abuse of discretion requires more than is required for reversal for an error of law, which merely requires a finding that the trial court committed an error of law resulting in prejudice to the appellant. Reversal for abuse of discretion requires a finding that the trial court's exercise of its discretion amounted to an attitude that is unreasonable, unconscionable, or arbitrary. As with motions for a mistrial, a reviewing court will not overturn the denial of a motion for a new trial under Crim.R. 33, absent an abuse of discretion. State v. LaMar, 95 Ohio St.3d 81, 2002-Ohio-2128, ¶ 82, citation omitted.
 {¶ 20} Long claims that the prosecutor improperly used grand jury testimony to impeach Brian Williams. While questioning Williams, the prosecutor believed that Williams *Page 7 
had not actually testified before the grand jury, but that she had only spoken to him before the grand jury convened. She explained that it is common to have witnesses appear for grand jury who end up not being called to testify. After trial the prosecutor learned that she was mistaken. However, it is significant in this case that the record shows that the prosecutor never referred directly to Williams's sworn grand jury testimony, but instead she used notes from her unsworn conversations with the witness prior to his grand jury testimony. Thus, she cannot be said to have used grand jury testimony to impeach the witness.
 {¶ 21} Long also argues that, in violation of Brady v. Maryland
(1963), 373 U.S. 83, 83 S.Ct. 1194, the State failed to turn over exculpatory material in discovery when it failed to provide the name of a neighbor who told David Svoboda that he or she had seen Hackitt approach Long carrying a baseball bat and that Long took the bat from Hackitt and then hit him with it. Despite attempts to identify who made those statements, the State was unable to do so. Nevertheless, the State did turn over the fact of the statement as well as the names and contact information for all of the witnesses. The State cannot be faulted for failing to provide information that it did not have.
 {¶ 22} For these reasons, we conclude that the trial court did not abuse its discretion in denying Long's motions for a mistrial and for a new trial. Therefore, his First Assignment of Error is overruled.
 III {¶ 23} Long's Second Assignment of Error is as follows:
 {¶ 24} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE STATE TO CALL AN EXPERT WITNESS IN REBUTTAL WHEN THE MATERIAL WAS *Page 8 
REASONABLY FORESEEABLE."
 {¶ 25} Under this assignment of error, Long insists that if the State wished to call an expert witness, it was required to do so during its case in chief, rather than in rebuttal. To the contrary, the State is not required to call in its case in chief every witness that it might find desirable or necessary to call as a result of witnesses that the defense may call, or other evidence that the defense may elicit, in its case in chief. In other words, the State cannot be expected to rebut evidence that has not yet been offered by the defense.
 {¶ 26} The admission of evidence is left to the sound discretion of the trial court. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶¶ 129-30. As mentioned above, an abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude by the court. Id.
 {¶ 27} During his case in chief Long called as an expert witness a biological engineer named Lori Truman. She testified that Hackitt's injuries were consistent with being hit in the face and falling backwards, hitting the back of the head on a hard, flat surface, and were not consistent with being hit on the side of the head with a baseball bat.
 {¶ 28} In rebuttal the State called radiologist Joseph Wenker, who had interpreted Hackitt's charts in the hospital on the night of his injuries. While it is true that the State could have called Wenker during its case in chief, it was not required to do so because his testimony was not necessary to establish the elements of Felonious Assault. Instead, it was reasonable for the State only to have chosen to present this testimony following Truman's. The State had direct, eyewitness testimony, that Long struck Hackitt in the head with a baseball bat. The State could reasonably conclude that it was not necessary to produce expert testimony that Hackitt's injuries were consistent with being struck in the head with the bat. It was only when Long produced expert testimony that Hackitt's injuries were not *Page 9 
consistent with an assault in the manner described by the State's witnesses that the State concluded that it needed expert testimony to the contrary, or at least that it would be desirable to rebut Long's expert. Thus, Wenker's testimony was within the proper purview of rebuttal.
 {¶ 29} Accordingly, Long's Second Assignment of Error is without merit.
 IV {¶ 30} Long's Third Assignment of Error is as follows:
 {¶ 31} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT OVERRULED THE DEFENDANT'S MOTIONS FOR ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE AND THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A CONVICTION OF THE DEFENDANT FOR FELONIOUS ASSAULT."
 {¶ 32} Finally, Long maintains that his conviction for Felonious Assault is not supported by sufficient evidence and that it is against the manifest weight of the evidence. After reviewing the evidence in the record, we conclude that the State offered sufficient evidence to warrant submitting the matter to a finder of fact and that the factfinder did not lose its way in finding Long guilty beyond a reasonable doubt of the Felonious Assault of John Hackitt.
 {¶ 33} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if *Page 10 
believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 34} In contrast, when reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 35} Long was convicted of Felonious Assault in violation of R.C.2903.11(A)(1), which proscribes knowingly causing serious physical harm to another. Long first argues that the State failed to prove that he used the bat to hit Hackitt. However, because Long was indicted under subsection (A)(1) rather than (A)(2), it was not necessary for the State to prove the use of a deadly weapon.
 {¶ 36} Long also insists that the State failed to show that he "knowingly" caused serious physical harm to Hackitt because he only punched Hackitt twice in the face in self defense. "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). *Page 11 
 {¶ 37} The thrust of Long's second argument lies in his attempt to discount the significance of Svoboda's testimony, claiming that Svoboda could not have seen what he claimed because it was dark and Svoboda was too far away. However, this overlooks the testimony of Officer Dine, who verified that Svoboda would have had a clear, although somewhat distant, view of the fight and that there was sufficient lighting. Additionally, he ignores the fact that the trial court visited the scene of the beating. The trial court specifically noted that it found the testimony of David Svoboda convincing. The credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve and not for the appellate courts. State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212.
 {¶ 38} Additionally, the trial court did not believe Hackitt's claim of self defense. Long conceded that he drove to Hackitt's home to confront him about derogatory statements made earlier in the day over the CB radio. David Svoboda saw a man hitting another with a bat-like object; he then took the object and drove off in his waiting van. Although he denied using a bat, Long did admit that he punched Hackitt. We note that Long's act of taking the bat to Woods's home undermines his claim that he did not use it. Whether Long used his fists or a bat, serious physical injury was a likely result of his actions. Hackitt's medical records and his testimony established that he suffered from very serious physical harm.
 {¶ 39} Considering the evidence in a light most favorable to the State, a rational trier of fact could reasonably have found that the essential elements of Felonious Assault were proven beyond a reasonable doubt. The evidence also refutes Long's claim that the trier of fact lost its way in finding that he knowingly caused serious physical harm to Hackitt. This is not one of those exc
 {¶ 40} eptional cases warranting reversal. Long's Third Assignment of Error is *Page 12 
overruled.
 V {¶ 41} All of Long's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, J., concurs
 DONOVAN, J., concurs in judgment only. *Page 1